UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLINGTON TORRES-ZULUAGA,<br><br>Petitioner,<br><br>v.<br><br>MINGA WOFFORD, et al.,<br><br>Respondents. | No. 1:26-cv-00318-DJC-EFB<br><br><br>ORDER |

Petitioner is a noncitizen who was paroled into the United States in August 2022. Over three years later, Petitioner attended a required Immigration and Customs Enforcement ("ICE") office for a check-in where he was arrested and detained. On January 15, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and subsequently filed the instant Motion for Temporary Restraining Order alleging that his detention is unlawful and seeking immediate release. For the reasons below, the Court GRANTS IN PART and DENIES IN PART Petitioner's Motion for Temporary Restraining Order.

**BACKGROUND**

Petitioner Willington Torres-Zuluaga is an asylum-seeker from Colombia who entered the United States with his wife and daughter in August 2022 without

1

inspection. (Torres-Zuluaga Decl. (ECF No. 5-1, Ex. A) ¶ 7.) Petitioner was apprehended by immigration officials at the border, detained for one night, and released on parole under Immigration and Nationality Act § 212(d)(5) (8 U.S.C. § 1182(d)(5)). (Habeas Petition ("Pet.") (ECF No. 1) ¶ 1; Mot. TRO (ECF No. 5) at 4.) As part of his release, Petitioner had to attend regular virtual and in-person check-ins with ICE via the Intensive Supervision Appearance Program ("ISAP"). (Pet. ¶ 1.)

Since his initial release from detention, Petitioner applied for asylum (*id.* ¶ 2; (*see* ECF No. 5-1, Ex. E)) and received work authorization from United States Citizenship and Immigration Services (Pet. ¶ 2). Petitioner and his family, with the permission of ICE, also relocated from Miami, Florida, to San Jose, California. (*Id.* ¶ 2.)

On December 22, 2025, Petitioner was arrested while presenting for a required ICE check-in and has since been detained ever since at the Mesa Verde ICE Processing Center in Bakersfield, California. (*Id.* ¶ 3.) ICE claimed that Petitioner had failed to timely check-in on his application on three occasions, but Petitioner denies awareness of any such violations. (*Id.* ¶ 36.) Rather, Petitioner represents that he has consistently complied with the terms of his release, including attending required check-ins, and has no criminal history. (Mot. TRO at 2; Torres-Zuluaga Decl. ¶¶ 8–12.) Following Petitioner's detention, ICE initiated removal proceedings against him under 8 U.S.C. § 1229(a) and he is currently scheduled for a master calendar hearing at the Adelanto Immigration Court in February 2026. (Pet. ¶ 37.)

Petitioner filed a Petition for Writ of Habeas Corpus along with the instant Motion for Temporary Restraining Order. Petitioner seeks immediate release from custody and a prohibition from re-detention pending further order of the Court, or alternatively, seeks immediate release and a pre-deprivation bond hearing prior to re-

arrest.[1]  The matter is fully briefed (Opp'n (ECF No. 8); Reply (ECF No. 9)) and ordered submitted without oral argument pursuant to Local Rule 230(g).

## LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain preliminary injunctive relief, the moving party must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips <u>sharply</u> in the plaintiff's favor,' and the other two Winter factors are satisfied."  *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted) (emphasis in original).

## DISCUSSION

**I.   Likelihood of Success on the Merits**

**A.  Due Process**

Petitioner argues that due process entitled him to a pre-deprivation hearing prior to his arrest and detention on December 22, 2025.[2]  He alleges that he has a weighty liberty interest in his conditional release from immigration custody.  (Pet. ¶ 48;

---

[1] Petitioner also seeks to have the Court prohibit the Government from transferring him out of this District and/or removing him from the country until the conclusion of habeas proceedings.  Because issue does not appear ripe for resolution at this time the Court DENIES Petitioner's request.

[2] Petitioner also raises a substantive due process challenge which the Court need not address at this time.  *See Pinchi v. Noem,* 792 F. Supp. 3d 1025, 1031 n.1 (N.D. Cal. 2025) ("Because granting a preliminary injunction enjoining the government from detaining [petitioner] without a pre-detention hearing obviates the threat of any imminent deprivation of her substantive due process rights, the Court need not address her substantive due process claim at this preliminary stage of the proceedings.").  Along these lines, the Court does not address Respondents' argument that detention under Section 1225(b) is constitutional.

3

Mot. TRO at 7–8.) Respondents contend that Petitioner is detained pursuant to Section 1225(b)(2), and because of the discretionary and temporary nature of his parole, cannot establish a liberty interest. (Opp'n at 3, 5.) Respondents also argue that there is no risk of erroneous deprivation because Petitioner was afforded the process in section 1182(d)(5)(A). (*Id.* at 5.) Nevertheless, Respondents acknowledge that "many district courts have determined Section 1226 – not Section 1225 – [] appl[ies] to individuals similarly situated to Petitioner." (*Id.* at 3.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Individuals subject to mandatory detention are not without due process rights. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent"); *see also Doe v. Becerra,* 787 F. Supp. 3d 1083, 1091-93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under section 1225(b)(1)). The Due Process Clause generally "requires some kind of a hearing <u>before</u> the State deprives a person of liberty or property." *Zinermon v. Burch,* 494 U.S. 113, 127 (1990) (emphasis in original).

Courts examine procedural due process claims in two steps. *Berrios v. Albarran,* No. 1:25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id.* (citation omitted). The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id.* (citation omitted).

**1. Petitioner has a Protected Liberty Interest.**

Here, Petitioner states that he was granted parole in August 2022 pursuant to 8 U.S.C. § 1182(d)(5). (Pet. ¶ 1.) Respondents argue that because Petitioner was only

granted temporary, discretionary admission into the United States, his parole cannot form a liberty interest. (Opp'n at 5.) The Court disagrees.

Under section 1182(d)(5)(A), noncitizens may be temporarily released on parole for "urgent humanitarian reasons or significant public benefit." Release under this section requires a determination that the noncitizen poses neither "a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Once released, a parolee acquires an interest in his or her continued liberty." *Chavarria v. Chestnut,* No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). As the district court in *Pinchi v. Noem* reasoned:

> Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the ... conditions [of release]." *Morrissey* [*v. Brewer*], 408 U.S. [471, 482 (1972)].

792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Many district courts in the Ninth Circuit, including this Court, have found that noncitizens paroled into the United States under section 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections. *See M.B. v. Noem,* No. 1:25-cv-00005-DJC-AC, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2026) (explaining that the government "endowed" petitioner with a protected liberty interest by releasing him on parole pursuant to section 1182(d)(5)(A)); *see also Chavarria,* 2025 WL 3533606, at *3 (collecting cases). The discretionary nature of Petitioner's parole does not alter the outcome. "Once the government exercises its discretion in ways that create constitutional rights, the fact that the government retains statutory discretion does nothing to supplant those previously created rights." *M.B.,* 2026 WL 74155, at *3 (citing *Morrissey,* 408 U.S. at 482 and *Rico-Tapia v. Smith,* No.

5

1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025)). Accordingly, Petitioner has a protected liberty interest in his release.

That said, Petitioner acknowledges his parole seems to have automatically terminated in October 2022.[3] (Reply at 3, (ECF No. 5-1, Ex. C).)  Respondents note that section 1182(d)(5)(A) provides that upon termination of parole, a noncitizen shall be "returned to the custody from which he was paroled," which Respondents represent to be section 1225(b)(2) custody.  (Opp'n at 3, 5.)  To the extent the argument is that Petitioner no longer has a liberty interest following the termination of parole, however, the Court disagrees.

Even with the October 2022 termination, Petitioner's "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser,* 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025).  As the Court observed in *Ramirez Tesara v. Wamsley:*

> Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted. . . .That the express terms of the [[section] 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee.

800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).  *See also Mody v. Warden*, No. 5:25-cv-03400-FMO-RAO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his section 1182 parole).  Rather, the government can create a liberty interest through the "implicit promise" of continued liberty beyond the expiration of parole.  *See D.L.C.*

---

[3] Petitioner does not raise a statutory claim in his Habeas Petition, but from the record in front of the Court it is unclear whether termination of Petitioner's parole was proper.  *See M.B.,* 2026 WL 74155, at *2; *Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 1144–46 (D. Or. 2025).

6

*v. Wofford,* No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (finding a liberty interest for a petitioner who, among other actions, had been granted employment authorization and continued to attend ICE check-ins after the nominal termination of his parole); *Rodriguez Cabrera v. Mattos,* No. 2:25-cv-01551-RFB-EJY, --- F. Supp. 3d ---, 2025 WL 3072687, at *11 (D. Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention [pursuant to [section] 1182] in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since.").

Here, Petitioner explains that prior to the October 2022 expiration date, and for three years after, he attended ICE check-in appointments without incident. (Reply at 3.) He also applied for asylum and was granted a work authorization permit. (*Id.*) Petitioner also states that he was never issued a formal revocation of his parole, nor was he placed in removal proceedings until after his re-detention in December 2025. (*Id.* at 3, 3 n. 4.) In the time between October 2022 and Petitioner's re-detention, Petitioner has established a life in the United States, works two jobs to support his wife and daughter, and contributes to his community. (*See id.* at 3.) Under these facts, it appears that Respondents permitted and implicitly promised Petitioner's continued release in spite of the dated expiration. Accordingly, the Court concludes Petitioner is likely to demonstrate a protected liberty interest.

**2. Petitioner is Entitled to a Pre-Deprivation Bond Hearing.**

Having found that Petitioner has a liberty interest, the Court next determines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution using the *Mathews* factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

     Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Petitioner has remained out of custody for over three years and established a life in San Jose. (*See* Pet. ¶ 36.) Prior to his detention he worked two jobs, paid his taxes, and supported his family. (Torres-Zuluaga Decl. ¶¶ 15, 17.)

     The risk of erroneous deprivation is also considerable. Petitioner has not received a bond hearing. Civil immigration detention is "nonpunitive in purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or danger to the community. *Zadvydas*, 533 U.S. at 690. Petitioner asserts, and Respondents do not contest, that Petitioner does not present either risk. (Mot. TRO at 7.) Further, it is undisputed that Petitioner appeared for a scheduled check-in appointment with ICE when he was arrested. (Pet. ¶ 3.) Respondents have not argued nor presented any evidence that there has been a change in circumstance between his 2022 entry into the United States and his detention on December 22, 2025. Thus, the value of additional procedural safeguards here is substantial. Finally, Respondents' interest in detention is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The effort and cost required to provide Petitioner with procedural safeguards are minimal.

     Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him prior to detention, the Court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

## II.    Remaining Factors

     Petitioner will suffer irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities." *Hernandez*, 872 F.3d at 995. More broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed

on detainees and their families as a result of detention." *Id*. Petitioner has established irreparable harm.

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The interests of equity and the public weigh in favor of Petitioner here. As discussed above, Petitioner is harmed by his ongoing detention. A temporary restraining order also inflicts minimal harm to the Government. Though Respondents have an interest in enforcing immigration laws the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071-TLT, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

### III. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, <u>if any,</u>" and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.,* 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 5) is GRANTED IN PART AND DENIED IN PART.

2. Petitioner Willington Torres-Zuluaga shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, unless they are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest and detention – and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.

4. Respondents are ORDERED TO SHOW CAUSE on or before January 30, 2026, as to why this Court should not issue a preliminary injunction on the same terms as this Order. On or before February 4, 2026, Petitioner may file a reply, if any, to Respondents' opposition.

5. Pursuant to Local Rule 230(g), the Motion for Preliminary Injunction is submitted on the papers. If the Court subsequently concludes that oral argument is necessary, a hearing will be set and the parties notified accordingly.

IT IS SO ORDERED.

Dated: **January 23, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE