# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLINGTON TORRES-ZULUAGA,

Petitioner,

v.

MINGA WOFFORD, et al.,

Respondents.

No.  1:26-cv-00318-DJC-EFB (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner is a citizen of Colombia seeking asylum in the United States.  ECF No. 1 at ¶ 1. He entered the United States in August 2022, at which time he was detained by the Department of Homeland Security (DHS) for one day and subsequently released on parole under INA § 212(d)(5).  *Id.*  He was required to check-in regularly with Immigrations and Customs Enforcement (ICE).  *Id.*  Petitioner and his family applied for asylum in 2023, and petitioner was subsequently granted work authorization by the United States Citizenship and Immigration Services (USCIS).  *Id.* at ¶ 2.  Petitioner was detained at a routine ICE appointment on December 22, 2025, and removal proceedings against him were instituted.  *Id.* at ¶ 3.[1]

Petitioner then filed a petition for writ of habeas corpus (ECF No. 1) and a motion for temporary restraining order.  ECF No. 5.  The district court granted the motion in part and denied it in part, ordering petitioner to be immediately released from custody and enjoining respondents

---

[1] Petitioner's verified petition establishes the facts articulated in this section.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987).

from re-detaining him without a bond hearing.  ECF No. 10.  The court denied petitioner's request to prohibit respondents from transferring him out of this district and/or removing him from the country until the conclusion of habeas proceedings, because the issue was not deemed ripe for resolution.  *Id.*  The district court subsequently granted petitioner's request for a preliminary injunction.  ECF No. 14.

The matter was referred to the undersigned.  *Id.*  This court ordered respondents to file an answer to the petition.  ECF No. 15.  Respondents filed an answer stating that they were relying on arguments in their earlier briefs (ECF Nos. 8 and 11) and had no additional arguments.  ECF No. 16.  Petitioner did not file a traverse.  For the following reasons, the undersigned recommends that the petition for writ of habeas corpus be GRANTED.

## LEGAL STANDARD

The federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law.  *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018).  The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence.  *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

## DISCUSSION

Petitioner brings two claims for relief in his petition for writ of habeas corpus.  ECF No. 1.  In claim one, petitioner maintains that his detention without a hearing violates his substantive due process rights, and that prior to any detention or re-arrest, he is entitled to a hearing before a neutral adjudicator.  *Id.* at ¶¶ 42-46.  In claim two, he maintains that his detention without a hearing violates his procedural due process rights, and that prior to any detention or re-arrest, he is entitled to a hearing before a neutral adjudicator.  *Id.* at ¶¶ 47-51.

In the district court's January 23, 2026 Order, the court found petitioner had shown a likelihood of success on the merits of his procedural due process claim.  ECF No. 10 at 3-8.  Specifically, the district court held as follows:

> Petitioner argues that due process entitled him to a pre-deprivation hearing prior to his arrest and detention on December 22, 2025.  He alleges that he has a weighty liberty interest in his conditional release from immigration custody. (Pet. ¶ 48;

2

Mot. TRO at 7–8.) Respondents contend that Petitioner is detained pursuant to Section 1225(b)(2), and because of the discretionary and temporary nature of his parole, cannot establish a liberty interest. (Opp'n at 3, 5.) Respondents also argue that there is no risk of erroneous deprivation because Petitioner was afforded the process in section 1182(d)(5)(A). (*Id.* at 5.) Nevertheless, Respondents acknowledge that "many district courts have determined Section 1226 — not Section 1225 — [] appl[ies] to individuals similarly situated to Petitioner." (*Id.* at 3.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. Individuals subject to mandatory detention are not without due process rights. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent"); *see also Doe v. Becerra,* 787 F. Supp. 3d 1083, 1091-93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under section 1225(b)(1)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch,* 494 U.S. 113, 127 (1990) (emphasis in original).

Courts examine procedural due process claims in two steps. *Berrios v. Albarran,* No. 1:25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty interest under the Due Process Clause exists. *Id.* (citation omitted). The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Id.* (citation omitted).

1.     **Petitioner has a Protected Liberty Interest.**

Here, Petitioner states that he was granted parole in August 2022 pursuant to 8 U.S.C. § 1182(d)(5). (Pet. ¶ 1.) Respondents argue that because Petitioner was only granted temporary, discretionary admission into the United States, his parole cannot form a liberty interest. (Opp'n at 5.) The Court disagrees.

Under section 1182(d)(5)(A), noncitizens may be temporarily released on parole for "urgent humanitarian reasons or significant public benefit." Release under this section requires a determination that the noncitizen poses neither "a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Once released, a parolee acquires an interest in his or her continued liberty." *Chavarria v. Chestnut,* No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). As the district court in *Pinchi v. Noem* reasoned:

> Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates "an implicit promise," upon which that individual may rely, that their liberty "will be revoked only if [they] fail[ ] to live up to the ... conditions [of release]." *Morrissey* [*v. Brewer*], 408 U.S. [471, 482 (1972)].

792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

Many district courts in the Ninth Circuit, including this Court, have found that noncitizens paroled into the United States under section 1182(d)(5) have a liberty

interest in their continued release and are entitled to certain due process protections. *See M.B. v. Noem,* No. 1:25-cv-00005-DJC-AC, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2026) (explaining that the government "endowed" petitioner with a protected liberty interest by releasing him on parole pursuant to section 1182(d)(5)(A)); *see also Chavarria,* 2025 WL 3533606, at *3 (collecting cases). The discretionary nature of Petitioner's parole does not alter the outcome. "Once the government exercises its discretion in ways that create constitutional rights, the fact that the government retains statutory discretion does nothing to supplant those previously created rights." *M.B.,* 2026 WL 74155, at *3 (citing *Morrissey,* 408 U.S. at 482 and *Rico-Tapia v. Smith,* No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025)). Accordingly, Petitioner has a protected liberty interest in his release.

That said, Petitioner acknowledges his parole seems to have automatically terminated in October 2022.[2] (Reply at 3, (ECF No. 5-1, Ex. C).) Respondents note that section 1182(d)(5)(A) provides that upon termination of parole, a noncitizen shall be "returned to the custody from which he was paroled," which Respondents represent to be section 1225(b)(2) custody. (Opp'n at 3, 5.) To the extent the argument is that Petitioner no longer has a liberty interest following the termination of parole, however, the Court disagrees.

Even with the October 2022 termination, Petitioner's "liberty interest [does] not expire along with his parole." *Omer G.G. v. Kaiser,* 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025). As the Court observed in *Ramirez Tesara v. Wamsley:*

> Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted. . . .That the express terms of the [[section] 1182] parole notice allowed for discretionary termination or expiration does not somehow obviate the need for the Government to provide a [sic] individualized bond hearing prior to re-detaining the parolee.

800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). *See also Mody v. Warden*, No. 5:25-cv-03400-FMO-RAO, 2026 WL 51976, at *6 (C.D. Cal. Jan. 5, 2026) (issuing temporary restraining order where petitioner had been re-detained following expiration of his section 1182 parole). Rather, the government can create a liberty interest through the "implicit promise" of continued liberty beyond the expiration of parole. *See D.L.C. v. Wofford,* No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (finding a liberty interest for a petitioner who, among other actions, had been granted employment authorization and continued to attend ICE check-ins after the nominal termination of his parole); *Rodriguez Cabrera v. Mattos,* No. 2:25-cv-01551-RFB-EJY, --- F. Supp. 3d ---,

---

[2] Petitioner does not raise a statutory claim in his Habeas Petition, but from the record in front of the Court it is unclear whether termination of Petitioner's parole was proper. *See M.B.,* 2026 WL 74155, at *2; *Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 1144–46 (D. Or. 2025). (Reply at 3, (ECF No. 5-1, Ex. C).) Respondents note that section 1182(d)(5)(A) provides that upon termination of parole, a noncitizen shall be "returned to the custody from which he was paroled," which Respondents represent to be section 1225(b)(2) custody. (Opp'n at 3, 5.) To the extent the argument is that Petitioner no longer has a liberty interest following the termination of parole, however, the Court disagrees.

2025 WL 3072687, at *11 (D. Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention [pursuant to [section] 1182] in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since.").

Here, Petitioner explains that prior to the October 2022 expiration date, and for three years after, he attended ICE check-in appointments without incident. (Reply at 3.) He also applied for asylum and was granted a work authorization permit. (*Id.*) Petitioner also states that he was never issued a formal revocation of his parole, nor was he placed in removal proceedings until after his re-detention in December 2025. (*Id.* at 3, 3 n. 4.) In the time between October 2022 and Petitioner's re-detention, Petitioner has established a life in the United States, works two jobs to support his wife and daughter, and contributes to his community. (*See id.* at 3.) Under these facts, it appears that Respondents permitted and implicitly promised Petitioner's continued release in spite of the dated expiration. Accordingly, the Court concludes Petitioner is likely to demonstrate a protected liberty interest.

**2.      Petitioner is Entitled to a Pre-Deprivation Bond Hearing.**

Having found that Petitioner has a liberty interest, the Court next determines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution using the *Mathews* factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Petitioner has remained out of custody for over three years and established a life in San Jose. (*See* Pet. ¶ 36.) Prior to his detention he worked two jobs, paid his taxes, and supported his family. (Torres-Zuluaga Decl. ¶¶ 15, 17.)

The risk of erroneous deprivation is also considerable. Petitioner has not received a bond hearing. Civil immigration detention is "nonpunitive in purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or danger to the community. *Zadvydas*, 533 U.S. at 690. Petitioner asserts, and Respondents do not contest, that Petitioner does not present either risk. (Mot. TRO at 7.) Further, it is undisputed that Petitioner appeared for a scheduled check-in appointment with ICE when he was arrested. (Pet. ¶ 3.) Respondents have not argued nor presented any evidence that there has been a change in circumstance between his 2022 entry into the United States and his detention on December 22, 2025. Thus, the value of additional procedural safeguards here is substantial. Finally, Respondents' interest in detention is low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The effort and cost required to provide Petitioner with procedural safeguards are minimal.

Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have been afforded to him prior to detention, the Court finds that Petitioner has established a likelihood of success on the merits of his due process claim.

ECF No. 10 at 3-8.

////

5

Respondents have offered no additional factual nor legal challenges to the court's analysis and conclusions contained in its January 23, 2026 Order. *See* ECF No. 15. After a review of the record and the pleadings, the undersigned finds that petitioner has demonstrated that he has a protected liberty interest that entitles him to a pre-deprivation bond hearing. *See Pinchi*, 792 F. Supp. 3d at 1032; *Mathews*, 424 U.S. at 335. Accordingly, petitioner has met his burden of proving the unlawfulness of his detention by a preponderance of evidence. *See Sepulveda Ayala*, 794 F. Supp. 3d at 911. In the interests of judicial efficiency, this court recommends that petitioner be granted relief on his procedural due process claim for the reasons articulated *supra* by the district court.[3]

## RECOMMENDATIONS

For the foregoing reasons, the court RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner without a pre-deprivation bond hearing before a neutral adjudicator, who possesses authority to order release, at which the Government must prove by clear and convincing evidence that petitioner is a flight risk or danger to the community such that his physical custody is required.

3. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

////

////

////

////

////

////

////

---

[3] Because petitioner should be granted relief on his procedural due process claim, the court need not address petitioner's substantive due process claim.

6

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 4, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE